UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BANEEN ALKASALANI, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 25-30059-MGM |
| U.S. EMBASSY IN LEBANON, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION TO DISMISS
(Dkt. No. 17)
August 25, 2026

MASTROIANNI, U.S.D.J.

## I. Introduction

Baneen Alkasalani ("Plaintiff"), proceeding *pro se*, brings this action seeking to compel the U.S. Embassy in Lebanon ("Defendant") to complete the administrative processing of her visa application on behalf of her fiancé (Abbass Ismail) after a Department of State ("DOS") consulate officer placed Mr. Ismail's visa in administrative processing. Liberally construing Plaintiff's complaint, Plaintiff alleges that Defendant's review of Mr. Ismail's visa application is unreasonably delayed, and she seeks to compel agency action under the Administrative Procedures Act ("APA") and the Mandamus and Venue Act ("MVA"), 28 U.S.C. § 1361. The court also construes Plaintiff's complaint as alleging that she was deprived of her procedural and substantive due process rights under the Fifth Amendment of the U.S. Constitution.

Pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), respectively, Defendant moves to dismiss for lack of subject matter jurisdiction, under the consular non-reviewability doctrine, and for failure to state a claim upon which relief may be granted.

For the reasons that follow, the court denies Defendant's motion as to the APA and MVA unreasonable delay claim. The court grants Defendant's motion as to Plaintiff's Fifth Amendment procedural and substantive due process claim, which is dismissed with prejudice.

## II. BACKGROUND

Plaintiff's fiancé, Mr. Ismail, resides in Lebanon. (*See* Compl., Dkt. No. 1.)[1] He attended his interview for his K-1 non-immigrant visa application at the U.S. Embassy in Beirut, Lebanon, some time in or before August 2024, and his visa application has been pending indefinitely in administrative processing since August 2024. (*Id.*) Despite making multiple attempts to contact the U.S. Embassy to inquire about Mr. Ismail's visa, Plaintiff has not received any response. (*Id.*) Plaintiff's separation from Mr. Ismail has caused Plaintiff to suffer emotional distress, including post-traumatic stress disorder and panic attacks, as well as financial challenges. (*Id.*) Plaintiff describes her situation as so dire that she may have to send her son to live in Lebanon despite the dangers that she believes he will face there. (*Id.*) Plaintiff does not state what law(s) Defendant has allegedly violated or the cause of action she is pursuing.[2] (*Id.*)

On September 22, 2025, Defendant moved to dismiss the action for lack of subject matter jurisdiction and failure to state a claim under Fed. R. Civ. Pro. Rule 12(b)(1) and (6). (*See* Mot. to Dismiss, Dkt. No. 17.) In support of its motion to dismiss, Defendant attaches a signed but unotarized declaration prepared by an Attorney Advisor with the Office of the Assistant Legal Adviser for Consular Affairs, who describes Mr. Ismail's visa status as having been refused for

[1] This case was originally assigned to Magistrate Judge Katherine A. Robertson, but it was reassigned to the undersigned on October 1, 2025. (Dkt. No. 19.)

[2] Nevertheless, "[t]he policy behind affording *pro se* plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997); *see also Xiaoyan Tang v. Citizens Bank, N.A.*, 821 F.3d 206, 219 (1st Cir. 2016).

administrative processing immediately following his interview on August 23, 2024.[3] (Dkt. No. 18-1.) Defendant asserts that although Mr. Ismail's visa is currently undergoing administratively processing, it remains refused under 8 U.S.C. § 1201(g).[4] (*See* Dkt. No. 18 at 4.) Defendant then provides the following four reasons for which the complaint should be dismissed. (*See id.* at 1-2.) First, the consular non-reviewability doctrine bars the court from reviewing Plaintiff's request for Defendant to act more promptly in finalizing its adjudication of Mr. Ismail's visa application. (*See id.* at 1.) Second, a consular officer has already adjudicated Plaintiff's visa application by denying it on August 23, 2024, and therefore the APA regulatory requirement to either issue or refuse a visa has been fulfilled. (*See id.* at 1-2.) Third, Plaintiff fails to identify an unreasonable delay under factors laid out in relevant caselaw. (*See id.*) Fourth, Plaintiff fails to assert a due process claim. (*See id.* at 2.) Neither the motion to dismiss nor the attached declaration addresses any subsequent correspondence between Plaintiff, Mr. Ismail, and the DOS.

Plaintiff failed to respond within fourteen days, as required under Local Rule 7.1(b)(2), and, as a result, this court ordered Plaintiff to file a response by November 11, 2025. (Dkt. No. 20.) On November 12, 2025, Plaintiff submitted a letter that is addressed generally to a consular officer at the U.S. Embassy in Lebanon. (Dkt. No. 22.) In the letter, she details the ongoing financial and emotional hardships she faces, including seizures, which have resulted in her inability to work as much as she would like. (*Id.*) She also states that she and Mr. Ismail have "complied with every

---

[3] Defendant's arguments for dismissal rely in part on factual information contained in the Attorney Adviser's declaration. While the declaration corroborates Plaintiff's assertion that Mr. Ismail's visa application is in administrative processing, the court declines to consider this declaration at this time. The declaration is not a public record; it is not referred to in Plaintiff's complaint; and Plaintiff does not concede the declaration's authenticity. *See Raouf v. U.S. Dep't of State*, 702 F. Supp. 3d 19, 27 (D.N.H. 2023) (declining to consider a declaration issued by the Office of the Assistant Legal Adviser for Consular Affairs at the motion to dismiss stage).

[4] Section 1201(g) of Title 8 of the United States Code codifies Immigration and Nationality Act ("I.N.A.") § 221(g). For clarity, the court will hereinafter refer to 8 U.S.C. § 1201(g) as I.N.A. § 221(g).

request made by the embassy and have submitted all necessary documents promptly," including a Form DS-5553 [*sic*][5] that Mr. Ismail was recently asked to provide. (*Id.*) Finally, she requests that Defendant provide her with an explanation for the delay, a status review or reconsideration, and an expected processing time. (*Id.*) Plaintiff does not address any of the arguments that Defendant asserted in its motion to dismiss. (*Id.*)

## III. STANDARD OF REVIEW

Even though Plaintiff failed to address Defendant's arguments, the court must review the complaint to determine whether Plaintiff states a plausible claim. *See, e.g.*, *Pomerleau v. West Springfield Pub. Schools*, 362 F.3d 143, 145 (1st Cir. 2004) ("When deciding a 12(b)(6) motion, the mere fact that a motion to dismiss is unopposed does not relieve the district court of the obligation to examine the complaint itself to see whether it is formally sufficient to state a claim." (internal quotation marks omitted)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The court accepts all well-

[5] Form DS-5553 does not exist. Based on the context, it appears that Plaintiff is referring to Form DS-5535 (Supplemental Questions for Visa Applicants). The online DS-5535 form associated with the U.S. Embassy in Beirut prompts users to complete the form because their application "requires additional administrative processing before [DOS] can continue." *See* https://lb.usembassy.gov/ds5535/ (last visited August 24, 2026). In light of Plaintiff's *pro se* status, the court will consider this alleged fact together with the other factual allegations asserted in her opposition as well as in her complaint when ruling on the motion to dismiss. *See Johnson v. Allen,* No. 22-CV-10907-DJC, 2022 WL 16823008, at *3 (D. Mass. Nov. 8, 2022) ("Given Plaintiffs' *pro se* status, the Court considers the further factual allegations in their opposition to Defendants' motion to dismiss."); *see also Musterd v. R.I. Dep't of Health*, No. 17-124JJM, 2018 WL 1684345, at *1 n.4 (D.R.I. Mar. 19, 2018) (explaining that in light of the leniency required for a *pro se* pleading, the court considered "all of [p]laintiff's plausible facts" in both of his complaints and his opposition to the motion to dismiss (citation omitted)).

pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor, but "do[es] not credit legal labels or conclusory statements." *Cheng v. Neumann*, 51 F.4th 438, 443 (1st Cir. 2022). "While a district court is generally limited to considering facts and documents that are part of the complaint, it may also consider documents incorporated by reference in the complaint, matters of public record, and other matters susceptible to judicial notice." *Newton Covenant Church v. Great Am. Ins. Co.*, 956 F.3d 32, 35 (1st Cir. 2020) (internal quotation marks and original alteration omitted). Dismissal is appropriate if the complaint fails to establish at least one "material element necessary to sustain recovery under some actionable legal theory." *N.R. by and through S.R. v. Raytheon Co.,* 24 F.4th 740, 746 (1st Cir. 2022) (internal quotation marks omitted).

## IV. SPECIAL CONSIDERATIONS APPLICABLE TO COMPLAINTS FILED BY PRO SE PLAINTIFFS

"Our judicial system zealously guards the attempts of *pro se* litigants on their own behalf." *Ahmed*, 118 F.3d at 890. Recognizing the difficulties *pro se* plaintiffs face, courts construe *pro se* complaints liberally. *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 75 (1st Cir. 2014). "However, *pro se* status does not insulate a party from complying with procedural and substantive law." *Ahmed*, 118 F.3d at 890. Like other plaintiffs, even a *pro se* plaintiff is required 'to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Rodi v. S. New England Sch. Of L.,* 389 F.3d 5, 19 (1st Cir. 2004) (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988)). Holding all plaintiffs, including *pro se* plaintiffs, to this standard is necessary to ensure every defendant is "afforded both adequate notice of any claims asserted against him and a meaningful opportunity to mount a defense." *Díaz-Rivera v. Rivera-Rodríguez*, 377 F.3d 119, 123 (1st Cir. 2004) (internal quotation marks omitted).

## V. DISCUSSION

### A. Statutory and Regulatory Framework

A U.S. citizen who seeks to have their fiancé(e) join them in the United States initiates the "K-1" nonimmigrant visa process by filing Form I-129F, Petition for Alien Fiancé(e), with U.S. Citizenship and Immigration Services ("USCIS"), a subagency of the Department of Homeland Security ("DHS").[6] *See* 8 U.S.C. § 1101(a)(15)(K)(i); 8 C.F.R § 214.2(k)(1); 9 Foreign Affairs Manual ("FAM") 502.7-3; 8 U.S.C. § 1184(d) (delegating petitioning procedure to the DHS). Upon arrival to the United States, the noncitizen must marry their U.S. citizen sponsor within ninety days, and after the wedding, the noncitizen can apply for their permanent residency. *See Wilkes v. Blinken,* No. 4:21-CV-01148-SRC, 2022 WL 1288402, at *1 (E.D. Mo. Apr. 29, 2022) (citing U.S. Dep't of State, *Nonimmigrant Visa for a Fianc(é)e (K-1)*, Travel.State.Gov (last accessed April 29, 2022), https://travel.state.gov/content/travel/en/us-visas/immigrate/family-immigration/nonimmigrant-visa-for-a-fiance-k-1.html); *see also* 8 U.S.C. § 1101(a)(15)(K)(i). If USCIS approves the K-1 petition, USCIS then sends the petition to the DOS National Visa Center for pre-processing before it is ultimately sent to the appropriate embassy or consulate where a consular officer conducts an interview with the noncitizen fiancé(e). *See* 8 U.S.C. §§ 1201(a)(1)(B), 1202(c); 22 C.F.R. § 41.102(a) (applicable to nonimmigrants); U.S. Citizenship & Immigration Services, *Summary of Process for the K-1 Fiancé/Fiancée Program* (2025) (last accessed August 21, 2026), https://www.uscis.gov/sites/default/files/document/guides/K1_Process_V11.pdf).

[6] "Visas are classified into two types: nonimmigrant and immigrant, [8 U.S.C.] § 1201(a)(1), and there are several classifications of nonimmigrant visas," including the K-1 fiancé(e) visa. *Haddad v. Platek*, No. 1:24-CV-2289, 2025 WL 2490653, at *1 (E.D. Va. Aug. 4, 2025) (citing 8 U.S.C. §1201(a)(1); 8 U.S.C. § 1101(a)(15)).

"At the interview, the visa applicant executes her or his visa application, which in this case is the DS-160, *Online Nonimmigrant Visa Application*, in the presence of the consular officer." *Haddad,* 2025 WL 2490653, at *2; 22 C.F.R. § 41.103. The applicant has the burden of proof to "establish that he is eligible to receive such visa." *Haddad*, 2025 WL 2490653, at *2 (quoting 8 U.S.C. § 1361). The authority to grant a visa rests exclusively with the consular officer. *See* 8 U.S.C. § 1201(a)(1). The I.N.A. requires that "[a]ll nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(d). The consular officer "*must* issue the visa, refuse the visa, or . . . discontinue granting the visa" once the "application has been properly completed and executed" before the officer. 22 C.F.R. § 41.121(a) (emphasis added). An officer can "refuse" a visa pursuant to I.N.A. § 221(g), and thereby place it into administrative processing, if he or she knows or has reason to believe that the noncitizen is ineligible to receive the visa. 8 C.F.R. § 41.121(b)(1); 8 U.S.C. § 1201(g). The FAM considers an I.N.A. § 221(g) refusal "legally, a refusal on a visa application, even if that refusal is eventually overcome." 9 FAM § 302.1-8(B)(c).

A consular officer "should find that an [immigrant visa] or [nonimmigrant visa] applicant has overcome a refusal under I.N.A. § 221(g) in two instances: when additional evidence is presented, or administrative processing is completed." 9 FAM § 306.2-2(A)(a). Following an I.N.A. § 221(g) refusal, additional evidence may be requested by a consular officer "through a Form DS-5535, Supplemental Questions for Visa Applicants, which covers topics such as an applicant's travel and employment history." *Ahadian et. al. v. Rubio*, et. al, No. 24-CV-12168-ADB, 2025 WL 1617224, at *2 (D. Mass. June 6, 2025); *Jung v. Goldman*, No. 1:24-CV-02500-SBP, 2025 WL 2687983, at *3 (D. Colo. Sept. 19, 2025) (discussing how the consular officer requested additional information through Form DS-5535 from a K-1 visa applicant); *Zekiri v. Sec'y, U.S. Dep't of State*, No. 6:24-CV-1232-JSS-NWH, 2025 WL 2021308, at *1 (M.D. Fla. July 18, 2025) (same); *Jahangiri v. Blinken,* No. CV DKC 23-2722, 2024 WL 1656269, at *2 (D. Md. Apr. 17, 2024) (same). If an applicant has presented

additional evidence that attempts to overcome a prior I.N.A. § 221(g) refusal, a consular officer "*should* re-open and re-adjudicate the case." 9 FAM § 306.2-2(A)(a)(1) (emphasis added). Moreover, 9 FAM § 502.7-3(C)(2)(a)(1) states that "Section 237 of Public Law 106-113 requires that the [DOS] establish a policy under which fiancé(e) visas be processed within 30 days of receipt of the necessary information from the applicant and the Department of Homeland Security." 9 FAM § 502.7-3(C)(2)(a)(1). The DOS "expects all visa sections to strive to meet the 30-day requirement." *Id.*

**B. Consular Non-Reviewability Doctrine**

As a preliminary matter, while the First Circuit previously framed the doctrine of consular non-reviewability using the language of jurisdiction, "the Supreme Court of the United States recently clarified that 'the doctrine of consular non-reviewability is not jurisdictional.'" *Teles de Menezes v. Rubio*, 156 F.4th 1, 9 (1st Cir. 2025) (quoting *Dep't of State v. Muñoz*, 602 U.S. 899, 908 n.4, (2024)); *see also Raouf*, 702 F. Supp. 3d at 25 (describing the "growing consensus among the Courts of Appeals that, despite statements in the caselaw suggesting that the doctrine is jurisdictional in nature, consular non-reviewability is in reality a merits issue"). The court therefore will assess consular non-reviewability as a merits question under Rule 12(b)(6).[7] *See id.*

"Under the doctrine of consular non-reviewability, an executive officer's decision to admit or to exclude a [non-citizen] is final and conclusive, and not subject to judicial review in federal

[7] The government raises the issue of jurisdiction solely on the basis of the consular non-reviewability doctrine and not based on the APA. The court finds that it has subject-matter jurisdiction because it construes Plaintiff's action as being brought pursuant to the MVA together with the APA. "While the APA does not provide an independent source of subject matter jurisdiction," *Conservation L. Found. v. Busey*, 79 F.3d 1250, 1261 (1st Cir. 1996), "the MVA vests district courts with 'original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff,'" *Mustafin v. Rubio*, No. 24-CV-12484-ADB, 2025 WL 1594754, at *4 (D. Mass. June 5, 2025) (citing 28 U.S.C. § 1361). Courts in the First Circuit have construed "the APA and the MVA to be coextensive to the extent that the APA creates a nondiscretionary duty on consular officials to act upon a visa or naturalization petition without unreasonable delay." *Id.*

court." *Muñoz*, 602 U.S. at 899 (internal quotation marks omitted). This is because decisions regarding the admission and exclusion of noncitizens are a "fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Id.* at 907 (internal quotation marks omitted). Such decisions "may implicate 'relations with foreign powers,' or involve 'classifications [. . .] defined in the light of changing political and economic circumstances' and, accordingly, 'such judgments are frequently of a character more appropriate to either the Legislature or the Executive.'" *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (alteration in original) (quoting *Trump v. Hawaii*, 585 U.S. 667, 702 (2018)). The Immigration and Nationality Act "does not authorize judicial review of a consular officer's denial of a visa; thus, as a rule, the federal courts cannot review those decisions." *Muñoz*, 602 U.S. at 908.

There are, however, two exceptions to the doctrine of consular non-reviewability. *Taha v. Blinken*, 765 F. Supp. 3d. 91, 94 (D. Mass. 2025); *see also Conley v. U.S. Dep't of State*, 731 F. Supp. 3d 104, 109-110 (D. Mass. 2024). The first is when the denial of a visa is alleged to burden "the constitutional rights of a U.S. citizen." *Taha*, 765 F. Supp. 3d. at 94 (citing *Muñoz*, 602 U.S. at 908). Even in such cases, "an executive officer's decision denying a visa that burdens a citizen's own constitutional rights is valid when it is made 'on the basis of a facially legitimate and bona fide reason.'" *Kerry v. Din,* 576 U.S. 86, 104 (2015) (quoting *Kleindienst v. Mandel,* 408 U.S. 753, 770 (1972)). Therefore, this exception to the consular non-reviewability doctrine allows the court to review Plaintiff's due process claim, which is analyzed under Subsection D.

The second exception permits judicial review if it has been statutorily authorized. *See Taha*, 765 F. Supp. 3d at 94; *Conley*, 731 F. Supp. 3d at 110. The APA allows a party to seek judicial review based upon a claim that there has been an "unreasonable delay" in an agency taking action. *See* 5 U.S.C. § 706(1) (authorizing a court to "compel agency action unlawfully withheld or unreasonably delayed"). Nevertheless, "[c]laims under the APA are subject . . . to any 'other limitations on judicial

review.'" *Taha*, 765 F. Supp. 3d at 94 (quoting 5 U.S.C. § 702). Neither the Supreme Court nor the First Circuit has addressed whether 5 U.S.C. § 706(1) should be recognized as a statutory exception to the consular non-reviewability doctrine. *See id.*

While courts are split on this issue, "[m]any courts have concluded that the [consular non-reviewability] doctrine does not preclude review of claims seeking to compel the DOS to adjudicate a visa application during administrative processing." *Ghannad-Rezaie v. Laitinen,* 757 F. Supp. 3d 148, 152 (D. Mass, 2024); *Patel v. Reno,* 134 F.3d 929, 931–32 (9th Cir. 1997) (finding that "when the suit challenges the authority of the counsel to take or fail to take on action as opposed to a decision taken within the consul's discretion, jurisdiction exists"); *Manshadi v. Allen*, No. 24-CV-10118-ADB, 2025 WL 524173, at *4 (D. Mass. Feb. 18, 2025) ("[T]he Court will assume that the consular non-reviewability doctrine does not bar judicial review of Plaintiff's claims to compel agency action under the APA."); *Al-Gharawy v. U.S. Dep't of Homeland Sec.,* 617 F. Supp. 3d 1, 11 (D.D.C. 2022); *Raouf,* 702 F. Supp. 3d at 30-31; *Conley*, 731 F. Supp. 3d at 110 (assuming without deciding "that the consular non-reviewability doctrine does not preclude judicial review of an unreasonable-delay claim under the APA"); *Ahadian et. al. v. Rubio*, *et. al.*, 2025 WL 1617224, at *5 (same).[8]

Moreover, "where a consular officer has refused a visa application under section 221(g) and provided assurances of further adjudication . . . courts have overwhelmingly concluded that the doctrine of consular non-reviewability does not apply." *Vang v. Franceschi, et al.,* No. 24-CV-609, 2024 WL 4370855, at *6 (E.D. Wis. Oct. 2, 2024) (alteration in original) (internal quotation marks omitted). Accordingly, the court holds that the doctrine of consular non-reviewability does not preclude Plaintiff's claim to compel the DOS to adjudicate Mr. Ismail's visa application, after his submission of the additional requested information, "when it has a nondiscretionary duty to do so

---

[8] For courts in this district that have concluded that there is no delay exception to non-reviewability and therefore relief under the APA is precluded, see *Taha*, 765 F. Supp. 3d at 94 (collecting cases).

because a claim of unreasonable delay does not seek judicial review of a consular decision to deny a visa." *Ghannad-Rezaie,* 757 F. Supp. 3d at 153; *see also* 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."); 8 U.S.C. § 1202(d).

**C. Plaintiff's APA and Mandamus Act Claim**

1. <u>Defendant Failed to Take a Discretionary Agency Action That It Was Required to Take</u>

When asserting an APA unreasonable delay claim, a plaintiff "must first allege that the agency 'failed to take a discrete agency action that it is required to take' by law." *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)). "'The APA imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time.'" *Ahmed v. U.S. Dep't of Homeland Sec.,* No. 21-cv-893 (APM), 2022 WL 424967, at *4 (D.D.C. Feb. 11, 2022) (quoting *Mashpee Wampanoag Tribe Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003)). A reviewing court is authorized to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

The court construes Plaintiff's complaint as alleging that 22 C.F.R. § 41.121(a), 8 U.S.C. § 1202(d), and 5 U.S.C. § 555(b) require Defendant to finalize the adjudication of Mr. Ismail's visa petition, within a reasonable time, after placing it in administrative processing pursuant to I.N.A. § 221(g) and upon receiving the additional evidence requested under 9 FAM § 306.2-2(A)(a)(1). Defendant argues that it carried out its obligation of either "issuing" or "refusing" a visa after Mr. Ismail executed his application through his in-person interview with a consular officer. (Dkt. No. 18 at 8.) Defendant asserts that the "refusal" of Mr. Ismail's application is "final" under the law and thus is not subject to judicial review. (*Id.* (citing *Karimova v. Abate*, Case No. 23-5178, 2024 WL 3517852, at *2 (D.C. Cir. July 24, 2024))).

However, the facts here call into question whether the I.N.A. § 221(g) refusal constitutes a final, as opposed to interim, decision. Specifically, Plaintiff consistently states that the basis of her complaint is Mr. Ismail's application being sent for administrative processing, rather than the DOS refusing his application, and that the DOS is not responding to her inquiries. *See Raouf,* 702 F. Supp. 3d at 30 (rejecting the defendants' argument that the plaintiff's spouse's application has already been "refused" pursuant to I.N.A. § 221(g) when the plaintiff did not allege that her spouse's application has been refused but rather that the defendants had failed to act on his application).

Moreover, Plaintiff's characterization of the I.N.A. § 221(g) notification as an interim refusal, rather than a final refusal, is supported by the subsequent information that Mr. Ismail appears to have been asked to provide through the Form DS-5535, indicating that the information will be used to reach a final decision as to his application. *See* U.S. Dep't of State, *Administrative Processing Information*, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html (last visited Aug. 24, 2026) (explaining that when a visa is refused under § 221(g), "[a] consular officer will request additional information when she or he believes the information is relevant to establishing that an applicant is eligible for the visa sought"). Courts, in addition to examining how plaintiffs describe an I.N.A. § 221(g) refusal in their complaint, give weight to the manner in which the DOS itself describes an I.N.A. § 221(g) refusal in correspondence provided to applicants. *See Vulupala v. Barr,* 438 F. Supp. 3d 93, 98 (D.D.C. 2020) ("As other courts have found, the focus should be on what is actually happening; even if the State Department chooses to characterize a section 221(g) notification as a 'refusal,' an interim decision is not sufficiently final to warrant the application of the doctrine."); *Vang,* 2024 WL 4370855, at *6. ("Section 221(g) refusals often present a unique problem whereby the visa is labeled 'refused,' but the refusal exists in only form and not substance."); *Hassan v. Dillard*, 758 F. Supp. 3d 973, 981 (D. Minn. 2024) (finding that "[s]imply describing the decision [on a K-1 nonimmigrant visa application]

as final does not make it so" ); *Mustafin,* 2025 WL 1594754, at *6 (finding the I.N.A. § 221(g) notification not to be a final refusal where the plaintiff, "when inquiring about the status of his visa application," received a response that "a decision on this case cannot be made until we finish our review"; that the DOS could not "predict when the adjudication of [his] application will be completed"; and that the DOS would adjudicate his application "as soon as the administrative processing has been completed"); *Al-Gharawy*, 617 F. Supp. 3d at 16 (noting that "[a]lthough the State Department may choose[ ] to *characterize* a section 221(g) notification as a refusal, . . . that magic word is not a get-out-of-review-free card [,] . . . [and] [a]t the motion to dismiss stage, the Court must examine [a plaintiff's] allegations to determine whether the complaint sufficiently alleges that the consular officer's refusal was in fact an interim decision [that] is not sufficiently final to warrant the application of the [consular non-reviewability] doctrine." (internal quotation marks omitted) (alterations made).

Mr. Ismail's submission of additional information through Form DS-5535 also differentiates Plaintiff's situation from the facts in *Karimova,* 2024 WL 3517852, at *2, the case that Defendant primarily rests its arguments upon. *See Aramnahad v. Rubio*, No. 24-CV-1817, 2025 WL 973483, at *8 (D.D.C. Mar. 31, 2025) (distinguishing the facts from *Karimova* because in Aramnahad's situation, the "consular officer . . . requested Plaintiffs provide additional documentation after placing their application in administrative processing, which Plaintiffs provided," whereas in *Karimova*, "there was no indication that the consular officer requested additional information" (citing *Karimova,* 2024 WL 3517852, at *2-4)). Upon interviewing Ms. Karimova, the consular officer issued an I.N.A. § 221(g) refusal, did not request additional information, and placed her application in "administrative processing in order to verify qualifications for [her requested] visa." *Karimova,* 2024 WL 3517852, at *2.

Accordingly, the *Karimova* court construed the plaintiff's request for a "final decision" on her application to mean requiring the consular officer "to either issue her a visa or refuse her application, without then also placing it in administrative processing." *Id.* at *3. The court found that the DOS had no such duty because after a consular officer places a visa application into administrative processing,"[i]f the consular officer gets enough new information, sometimes from sources other than the applicant, the officer can determine *sua sponte* that the administrative processing is 'completed' and may then re-open and re-adjudicate the applicant's case." *Id.* at *2 (citing 9 FAM § 306.2-2(A)(a)(2)). However, "[u]nless and until that happens, though, the visa application remains officially refused." *Id.*

Because Ms. Karimova was not asked to submit additional evidence, the *Karimova* court did not address Plaintiff's specific scenario, which falls under 9 FAM § 306.2-2(A)(a)(1). Under this provision of the FAM, upon the submission of "additional evidence to attempt to overcome a prior [I.N.A. § 221(g)] refusal," a consular officer "should re-open and re-adjudicate the case by overcoming the prior I.N.A. § 221(g) refusal and determining whether the applicant is eligible for a visa." FAM § 306.2-2(A)(a)(1). Moreover, 9 FAM § 502.7-3(C)(2)(a)(1), inapplicable in *Karimova*, requires the DOS to establish a policy, pursuant to Section 237 of Public Law 106-113, under which fiancé(e) visas are to be processed within 30 days of receipt of the necessary information from the applicant and the Department of Homeland Security. 9 FAM § 502.7-3(C)(2)(a)(1). The court finds the facts at bar distinguishable from *Karimova*, and while recognizing that the FAM is not legally binding on the DOS, the applicable FAM provisions in Plaintiff's case, specifically 9 FAM § 306.2-2(A)(a)(1) and 9 FAM § 502.7-3(C)(2)(a)(1), are given some weight as "administrative guidelines." *Vance v. Terrazas*, 444 U.S. 252, 262 n.6 (1980) (describing the FAM as consisting of administrative guidelines); *see also Okere v. United States,* No. 18 CV 5024, 2019 WL 13248337, at *3 (N.D. Ill. Nov. 4, 2019) (discussing how "judges have repeatedly cited the Foreign Affairs Manual to establish

official, internally enforceable policy of the United States") (citing *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 7 (2015); *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 367–68 (2006) (Breyer, J., dissenting); *Arias v. Lynch*, 834 F.3d 823, 832 (7th Cir. 2016) (Posner, J., concurring) (definition of crimes of moral turpitude)), *aff'd*, 983 F.3d 900 (7th Cir. 2020).

Accordingly, the court finds that Plaintiff has plausibly alleged that the DOS has a nondiscretionary duty of adjudicating Mr. Ismail's application within a reasonable time after having received Mr. Ismail's additional evidence that may overcome his initial I.N.A. § 221(g) refusal. *See* 8 U.S.C. § 1202(d); 22 C.F.R. § 41.102(a); 5 U.S.C. § 555(b).

2. <u>The Court Cannot Determine at this Stage Whether There was Unreasonable Delay Under the APA</u>

Because at this stage, the court does not find that Defendant has carried out its final agency decision, the court turns to the second question under 5 U.S.C. § 706(1): whether the agency's delay in taking this action was unreasonable. The First Circuit follows the "TRAC" factors laid out in *Telecommunications Research & Action Center v. Federal Communications Commission ("TRAC")*, 750 F.2d 70, 80 (D.C. Cir. 1984), to evaluate whether a timeframe for agency action is unreasonable. *V.U.C. v. U.S. Citizenship & Immigr. Servs.*, 557 F. Supp. 2d 218, 223 (D. Mass. 2021). The *TRAC* factors consist of:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Ahmed v. Blinken*, 759 F. Supp. 3d 1, 11 (D.D.C. 2024) (citing *TRAC*, 750 F.2d at 80).

"Because an analysis of the *TRAC* factors typically requires the court to wade through the particular facts and circumstances of an agency's delay, courts generally conclude that 'undertaking such a fact-bound analysis at [the motion to dismiss] stage is premature.'" *Al-Gharawy*, 617 F. Supp. 3d at 17–18 (citing *Thomas v. Pompeo*, 438 F. Supp. 3d 35, 44 n.6 (D.D.C. 2020)); *see also Gonzalez v. Cuccinelli*, 985 F.3d 357, 375 (4th Cir. 2021) (concluding that "[a] claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage."). Accordingly, the court declines to hold at this stage that Plaintiff has failed to state a plausible claim of unreasonable delay. A preliminary examination of some of the *TRAC* factors indicates why.

The first two *TRAC* factors are usually considered together. *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 165 (D.D.C. 2021). "The first factor asks whether the agency's response time . . . is governed by an identifiable rationale [which is also described as a rule of reason]," and "the second looks at whether Congress has provided a timetable that may supply content for th[e] rule of reason." *Manshadi*, 2025 WL 524173, at *5 (internal quotation marks omitted) (alteration in original). At this early stage in litigation, the court lacks sufficient information to determine whether these factors lean in Plaintiff's or Defendants' favor for the following reasons.

Defendant asserts that there is "no statutory or regulatory timeframe within which the [DOS] or a consular officer must adjudicate or re-adjudicate visa applications," and Congress has given agencies significant latitude as to immigration processing. (Dkt. No. 18 at 11-12 (citing *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153-54 (D.D.C. 2017))). Given the lack of a timetable, Defendant argues that when considering the first two TRAC factors together, "courts have routinely concluded that "delays" of similar length [of approximately thirteen months] between a visa interview and refusal and the filing of a complaint do not constitute unreasonable delay." (*Id.* at 12.) But it is this exact type of explanation that the *Raouf* court rejected where the "defendants merely argue[d] that

the length of the delay in this case is not unreasonable as a matter of law, without pointing to agency constraints or procedures that could justify the delay." *Raouf*, 702 F. Supp. 3d at 33. The court found that "[w]hether a 'rule of reason' exists for agency action 'cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency.'" *Id.* (quoting *Tate v. Pompeo*, 513 F. Supp. 3d 132, 148 (D.D.C. 2021)).

The court cannot determine whether the agency failed to follow the rule of reason because it lacks documentation regarding when the Form DS-5535 was submitted, the reasons for how long it has taken the consular officer to process the additional information in the Form, and the reasons for the thirteen month wait since the interview. Accordingly, "a more developed record is necessary to determine whether the delay here is governed by a rule of reason." *Ahmed*, 759 F. Supp. 3d at 13; *see also Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 453 (6th Cir. 2022) (finding that the government's analysis of the first *TRAC* factor fails on several grounds and that "Plaintiffs' lack of evidence [does not] terminate their suits at the motion-to-dismiss stage" in part since "the machinery of the U-visa and prewaitlist-work-authorization adjudication processes is known only to USCIS"); *Jingjing Liu* 2021 WL 2115209 at *3 (finding that "a delay in adjudication caused by the agency's failure to follow any rule of reason is almost tautologically unreasonable").

"Turning to the third, fourth, and fifth *TRAC* factors, each of these requires an inquiry into the impact of the delay and the effect of granting relief to Plaintiff[] on the agencies and other applicants." *Al-Gharawy,* 617 F. Supp. 3d at 19. The fourth TRAC factor in particular consists of "the effect of expediting delayed action on agency activities of a higher or competing activity," and is usually given more weight than the others as courts disfavor moving one petitioner ahead in the proverbial line at the expense of other petitioners. *Durrani v. Bitter*, No. CV 24-11313-FDS, 2024 WL

4228927, at *5 (D. Mass. Sept. 18, 2024) (citing *TRAC*, 750 F.2d at 80); *see also Mashpee Wampanoag Tribal Council, Inc.*, 336 F.3d at 1100 (quoting *In re Barr Lab'ys, Inc.,* 930 F.2d 72, 75 (D.C. Cir. 1991)). Defendant argues that granting Plaintiff relief would arbitrarily place her in front of others and by doing so, the court would set a "dangerous precedent" by prioritizing her simply "because she has the ability to initiate litigation." (Dkt. No. 18 at 16.) However, courts have generally expressed concern about *represented* parties receiving priority over others who "do not have the wherewithal to retain private counsel and to bring suit in District Court." *Fangfang Xu v. Cissna,* 434 F. Supp. 3d 43, 55 (S.D.N.Y. 2020); *see also Durrani*, 2024 WL 4228927, at *3 (finding in favor of the government as to the fourth TRAC factor because "[m]oving plaintiff's mother to the front of the line would simply move the several thousand other applicants back one space, . . . including those applicants who lack the wherewithal to retain private counsel and to bring suit in District Court" (internal quotation marks omitted)); *Pesantez v. Johnson*, No. 15 CIV. 1155 (BMC), 2015 WL 5475655, at *4 (E.D.N.Y. Sept. 17, 2015).

Moreover, where, as here, the facts relevant for a through *TRAC* analysis are "most likely to be within the exclusive control of the agency," *Rezaii,* 2025 WL 750215, at *5, requiring any plaintiff, but especially one who is unrepresented, to "plausibly surmount the *TRAC* factors would, contrary to *Twombly* and *Iqbal*, effectively impose a heightened pleading standard that unfairly places a thumb on the scales in favor of the government." *Id.* (citing *Li v. Jaddou*, No. 22-50756, 2023 WL 3431237, at *1 n.2 & n.3 (5th Cir. May 12, 2023) (per curiam)); *see also Al-Gharawy,* 617 F. Supp. 3d at 19 (finding that the court did not have sufficient evidence, such as government declarations, that would have established "the complexities of moving an applicant to the front of the application queue"). In light of the numerous unknowns in Plaintiff's case, the court finds it premature to determine whether this factor favors Defendant. *See id.*

The third and fifth factors, consisting of the impacts of the delay on Plaintiff, weigh in her favor. The third factor identifies "whether 'human health and welfare are at stake'—in which case judicial intervention is more justified—and the fifth assesses the 'nature and extent of the interests prejudiced by delay.'" *Milligan v. Pompeo,* 502 F. Supp. 3d 302, 319 (D.D.C. 2020) (quoting *TRAC*, 750 F.2d at 80). Plaintiff plausibly alleges that the delay has had a severe impact on her financial and mental well-being, including in the form of PTSD and panic attacks, and as a result, she has considered sending her son to live in Lebanon despite her fears that he will be in severe danger. (Dkt. No. 1.); *see Ahmed*, 759 F. Supp. 3d at 14 (finding that the third and fifth TRAC factors weighed in the plaintiff's favor where she alleged severe distress and emotional harm due to her prolonged inability to visit her daughter, son-in-law, and grandchild" (internal quotation marks omitted)).

The sixth *TRAC* factor concerns "whether the agency's bad faith caused the delay." *Sawahreh v. Dep't of State*, 630 F. Supp. 3d 155, 164 (D.D.C. 2022). Plaintiff has not alleged that Defendant has acted in bad faith, but "[a]s *TRAC* directs . . . the lack of plausible allegations of impropriety does not weigh against [Plaintiff]." *Ahmed*, 759 F. Supp. 3d at 14 (citing to *Fakhimi v. Dep't of State*, No. 23-CV-1127, 2023 WL 6976073, at *11 (D.D.C. Oct. 23, 2023)). At this stage, this factor is neutral.

Accordingly, the court denies Defendant's motion to dismiss as to Plaintiff's APA unreasonable delay claim.

**D. Plaintiff's Due Process Claim under the Fifth Amendment**

Turning to the question of whether Plaintiff's constitutional rights have been burdened, the court construes Plaintiff's asserted liberty interest as "the right to reside with her noncitizen [fiancé] in the United States" and concludes that she does not have this fundamental right. *Muñoz*, 602 U.S. at 910. In *Muñoz,* where the plaintiff relied on a "right to reside with her noncitizen spouse in the United States," the Supreme Court held that "a citizen does not have a fundamental liberty interest

in her noncitizen spouse being admitted to the country." *Id.* at 909-10. Although in *Muñoz* the plaintiff asserted a procedural due process claim, the Court explained that even if she had alleged a violation of "her substantive due process right to bring her noncitizen spouse to the United States," such a claim "[could not] succeed . . . because the asserted right is not a longstanding and deeply rooted tradition in this country." *Id.* at 919 (internal quotation marks omitted).

Since then, several courts, applying *Muñoz*, have held that U.S. citizen plaintiffs have neither a protected liberty interest nor a plausible allegation of denial of due process as to their interest in residing with their fiancé(e)s in the United States. *See*, *e.g.*, *Jung*, 2025 WL 2687983, at *13 ("[A] U.S. citizen has no constitutionally-protected liberty interest in having his foreign-citizen family members[, including his fiancée,] live in the United States."); *Hassan*, 758 F. Supp. 3d at 978 ("The impact of the *Muñoz* decision on Ms. Hassan's due process claim [based on the defendant's delay in adjudicating her fiancé's visa application] is plain: for both the substantive and procedural due process claims, *Muñoz* precludes relief because Ms. Hassan cannot identify a liberty interest protected by the Fifth Amendment."); *Hemood v. Shea*, No. EDCV 25-797-KK-DTBX, 2025 WL 2684282, at *8 (C.D. Cal. Sept. 8, 2025) ("As recently clarified by the Supreme Court, there is no fundamental right to bring a noncitizen spouse to the United States, let alone a fiancé." (internal quotation marks omitted)). Accordingly, because the court concludes Plaintiff does not have a fundamental right to reside with her fiancé in the United States, it need not determine whether the denial of the visa was predicated upon a "facially legitimate and bona fide reason." *Kleindienst*, 408 U.S. at 770.

## VI. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Dkt. No. 17) is GRANTED as to Plaintiff's due process claim and DENIED as to her unreasonable delay claim pursuant to the APA. Plaintiff's Fifth Amendment due process claim is dismissed with prejudice. It is further

ORDERED that Defendant shall file an answer to Plaintiff's complaint by **September 8, 2026**.

It is So Ordered.

_/s/ Mark G. Mastroianni________
MARK G. MASTROIANNI
United States District Judge